UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN L. STANG,

    Plaintiff,

v.                                            Case No. 1:13-cv-280
                                            Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on July 1, 1976 (AR 171).[1] On July 29, 2007, he suffered an injury when he fell over six feet, landing on his back (AR 175). As a result of this accident, plaintiff underwent lumbar fusion surgery on August 25, 2008 (AR 18). Plaintiff filed for DIB and SSI, claiming to have been disabled since the July 2007 accident (AR 171). Plaintiff identified his disabling conditions as a spinal injury, surgery and removal of L4, L5 and S1, and installation of steel gages in his back (AR 174).

Plaintiff completed a GED and had additional classes in computer literacy, electronic assembly and soldering (AR 182). He had previous employment as a chef in a deli, a coop worker at a chicken farm, a general laborer, a machine operator, an assembler, an inspector and a painter

---

[1] Citations to the administrative record will be referenced as (AR "page #").

(AR 176). An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision granting benefits in part on August 16, 2011 (AR 11-29). The ALJ found that plaintiff was disabled from July 29, 2007 through November 4, 2009, but had medically improved as of November 5, 2009, and was not disabled as of that date (AR 29). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point

in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

If a claimant is found disabled at any point in the process, as in this case, the ALJ must also determine if the disability continued through the date of the decision. Under the regulations, an ALJ conducts an analysis to determine whether a claimant has experienced medical improvement[2]:

> With one exception, the medical improvement analysis is the same for DIB and SSI claims and involves the following steps: (1) does the claimant have an impairment or combination of impairments that meets or equals in severity a listed impairment; (2) has the claimant experienced "medical improvement" in his condition; (3) has the claimant's medical improvement resulted in an increase of his residual functional capacity (RFC); (4) are the claimant's current impairments in combination severe; (5) if the claimant's current impairments are severe, the ALJ must determine if the claimant's RFC precludes the performance of his past relevant work, if not the claimant will be found to not be disabled; and (6) if the claimant's RFC does preclude the performance of his past relevant work, the ALJ must determine whether there exists other work which the claimant can perform despite his limitations. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

*Love v. Commissioner of Social Security*, 605 F.Supp.2d 893, 904 (W.D. Mich. 2009) (footnotes omitted). Where a claimant seeks DIB, the medical improvement analysis initially asks whether the claimant is performing substantial gainful activity. *Id.* at fn. 1; 20 C.F.R. § 404.1594(f)(1).

---

[2] "Medical improvement" is defined as:

> . . . any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . .

20 C.F.R. §§ 404.1594(b)(1)(i) and 416.994(b)(1)(i).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

### A. July 29, 2007 through November 4, 2009

The ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 29, 2007 and that he met the insured status requirements under the Social Security Act through September 30, 2010 (AR 15). Second, the ALJ found that from July 29, 2007 through November 4, 2009, plaintiff had severe impairments of degenerative disc disease of the lumbar spine, post lumbar fusion; depression; and a mood disorder with chronic pain (AR 15). At the third step, the ALJ found that from July 29, 2007 through November 4, 2009, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine) or 12.04 (affective disorders) (AR 15-16).

The ALJ decided at the fourth step that from July 29, 2007 through November 4, 2009:

> [T]he claimant has the residual functional capacity to perform sedentary work as dermed in 20 CFR 404.1567(a) and 416.967(a) except the claimant is unable to climb ladders, ropes, scaffolds, or stairs. He can climb ramps, balance, stoop, and crouch less than frequently, but he is unable to kneel, crawl, or walk on uneven surfaces. The claimant is also limited to no more than simple, routine, repetitive tasks, and must take unscheduled breaks, in excess of one hour, during a work shift.

5

(AR 16). The ALJ also found that plaintiff was unable to perform any past relevant work during this time period (AR 20).

At the fifth step, the ALJ determined that from July 29, 2007 through November 4, 2009, there were no jobs that existed in significant numbers in the regional economy that plaintiff could perform considering his age, education, work experience and RFC (AR 20). Therefore, the ALJ found that plaintiff was under a disability, as defined by the Social Security Act, from July 29, 2007 through November 4, 2009 (AR 21).

**B.    Since November 5, 2009**

After the ALJ found that plaintiff was disabled, she applied the medical improvement analysis and concluded that medical improvement occurred as of November 5, 2009 (AR 23).[3] Having previously found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 29, 2007 (AR 15), the ALJ found that plaintiff still had the same severe impairments, i.e., degenerative disc disease of the lumbar spine, post lumbar fusion; depression; and a mood disorder with chronic pain, and that plaintiff still did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15, 21). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine) or 12.04 (affective disorders) (AR 21-23).

The ALJ determined that medical improvement had occurred as of November 5, 2009, based upon the results of plaintiff's consultative examination with Michael Jacobson, D.O. (AR 23).

---

[3] While the ALJ's decision explained the eight-step medical improvement analysis set forth in 20 C.F.R. § 404.1594(f) (AR 13-14), her decision explicitly cited only step 2 (§§ 404.1594(f)(2) and 416.994(b)(5)(i)) and step 8 (§§ 404.1594(f)(8) and 416.994(b)(5)(vii)) (AR 21, 29). Although the ALJ failed to explicitly identify each step, it appears that she properly followed the medial improvement analysis. Furthermore, plaintiff brief did not raise any objection to the ALJ's application of the analysis.

6

The ALJ found that the medical improvement was related to plaintiff's ability to work and that plaintiff's RFC had increased as follows:

> [T]he claimant has had the residual functional capacity to lift and carry up to twenty pounds occasionally and up to ten pounds frequently, stand and/or walk at least two hours total in an eight-hour workday, and sit about six hours total in an eight hour workday. The claimant can never climb ladders, ropes, or scaffolds, and he can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant is not able to work on uneven surfaces, and he needs a cane when walking more than one hundred feet. He is also limited to simple, routine, repetitive tasks.

(AR 23). Despite the increased RFC, the ALJ found that plaintiff was unable to perform any past relevant work (AR 27).

Finally, the ALJ determined that since November 5, 2009, plaintiff could perform a range of light work (AR 28-29). This work included the following jobs in the regional economy (Michigan): small parts assembler (5,800 jobs); packer/sorter (4,500 jobs); and general clerk (6,000 jobs) (AR 28). The ALJ noted that all of these jobs are unskilled and sedentary (AR 28). On this basis, the ALJ determined that plaintiff's disability ended on November 5, 2009 (AR 29).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

**A.    Is there substantial evidence to support the Commissioner's burden to establish that the claimant's condition has improved to the point that he has the RFC to perform substantial gainful activity?**

**1.    Physical RFC**

The ALJ determined that plaintiff's disability ceased on November 5, 2009, the date he underwent a consultative examination with Dr. Jacobson (AR 23). The doctor summarized plaintiff's condition as follows:

7

> The patient is a 33 year old male who would benefit from the use of a cane over uneven surfaces and distances over 100 feet. The patient does not require the use of a cane for other shorter distances in the house. The patient does not have any restriction in range of motion. He does not have any musculoskeletal deficits noted. the patient does have a surgical scar noted and does walk with a right-sided limp, which is non-ataxic, widebased or small-stepped.

(AR 561).

The ALJ relied on Dr. Jacobson's opinion as the basis for finding medical improvement:

> Beginning November 5, 2009, the claimant underwent a consultative examination with Michael Jacobson, D.O. This was his first examination since he stopped physical therapy in December 2008. He told Dr. Jacobson that following surgery and his therapy, he is unable to sit for more than five minutes, stand for more than ten minutes, or walk for more than short periods. He noted that he is only able to lift up to fifteen pounds, and uses a cane to walk, but only on uneven surfaces or for distances more than one-hundred feet. The claimant was able to ambulate to and from the car, and to and from the examination room, and in the examination room without a cane. Dr. Jacobson noted that the claimant had a right-sided limp, but otherwise his gait was normal, non-ataxic, and not wide-based. The claimant had a normal range of motion in all joints, including the lumbar spine, and his straight leg-raising test was negative. There was no muscle spasm, his pulses were normal, and there was no edema. The claimant had no trouble getting on or off the examination table, and his motor strength was 5/5. There were no deficits in sensation or reflexes (Exhibit 15F).
>
> \* \* \*
>
> In comparing the claimant's residual functional capacity for the period during which he was disabled with the residual functional capacity beginning November 5, 2009, the undersigned finds that the claimant's functional capacity for basic work activities has increased.

(AR 23).

Plaintiff contends that his physical condition did not improve as of November 5, 2009. Specifically, plaintiff contends that Dr. Jacobson did not perform a functional assessment, and that "[t]here is certainly nothing in the opinion of Dr. Jacobson that provides any substantial

evidence that the claimant can frequently lift ten pounds, or sit for most of an eight hour day." Plaintiff's Brief at p. 10. Plaintiff's position is somewhat disingenuous. As noted by the ALJ, it was plaintiff who reported to Dr. Jacobson that he only needed a cane to walk over uneven surfaces or for more than 100 feet and that he could lift 15 pounds (AR 559). Furthermore, on testing, the doctor found that plaintiff had normal range of motion for his dorsolumbar spine and that plaintiff's motor strength was "5/5", that plaintiff's sensation remained intact, that plaintiff's reflexes were present and symmetrical and that plaintiff was "alert and oriented times three" (AR 560).

The ALJ translated Dr. Jacobson's findings into the November 5, 2009 RFC, which included the following improvements: (1) plaintiff could now perform light work rather than sedentary work; (2) plaintiff could now stand for at least two hours and sit about six hours total in an eight hour workday; (3) plaintiff could now walk up to 100 feet without a cane; and (4) it was no longer necessary for plaintiff to take unscheduled breaks (AR 16, 23). Accordingly, plaintiff's claim of error will be denied.

**2.    Mental RFC**

Plaintiff's mental RFC remained unchanged after November 5, 2009, i.e., he was still limited to performing "simple, routine, repetitive tasks" (AR 16, 23). Plaintiff relies on the opinions of licensed psychologist, Douglas W. Bentley, Ed.D. who examined plaintiff on February 18, 2010 (AR 602-05), to support his claim that he suffered from severe and disabling mental limitations after that date.

The ALJ summarized Dr. Bentley's findings as follows:

> Licensed psychologist Douglas W. Bentley, Ed.D., examined the claimant in February 2010 at the request of the claimant's attorney. The claimant told Mr. Bentley that he had always had behavioral problems and emotional struggles. He complained of poor sleep, vivid dreams that scare him and keep him awake, feeling

> hopeless, agitation, sadness, crying daily, and a lack of focus. He admitted to suicidal thoughts, without intent or plan, and said he always needed things placed in a certain way. Mr. Bentley observed the claimant to be anxious when told his fiance could not stay for testing, and said he did not like being alone. The MMPI testing suggested a person mildly attempting to put oneself in a negative light, and during the testing, the claimant was anxious. His clinical scales suggested schizophrenic symptoms, long-term anxiety, social isolation, and paranoia. Mr. Bentley also noted symptoms of obsessive-compulsive disorder (OCD), anxiety, depression, and attention deficit hyperactivity disorder (ADHD). He diagnosed the claimant with paranoid schizophrenia with negative symptoms, major depressive disorder, and OCD. He also gave him a GAF rating of 30, indicating that his behavior is considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas (Exhibit 21F).

(AR 24).

The ALJ evaluated Dr. Bentley's opinion as follows:

> In February 2010, Mr. Bentley stated that the claimant is totally disabled and his work is impaired on physical and emotional levels. He further opined that the claimant has marked limitations in several functional areas including his ability to maintain attention and concentration for extended periods, his ability to work in coordination with or proximity to others without being unduly distracted by them, and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. The undersigned affords very little weight to this opinion. Mr. Bentley only examined the claimant one time, and his assessment is inconsistent with his own findings that the claimant is only mildly attempting to put himself in a negative light. Furthermore, the undersigned notes that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored (Exhibit 21F).

(AR 27). In finding that plaintiff was not disabled, the ALJ gave great weight to the December 28, 2009 opinion of a non-examining state agency psychologist, Fred Greaves, Ed.D. who reviewed plaintiff's medical records and determined that plaintiff was only partially credible and capable of performing simple, routine tasks within his physical limitations (AR 579).

10

Plaintiff contends that his low Global Assessment of Functioning ("GAF") scores [4] assigned by Dr. Bentley are evidence of his severe limitations. Plaintiff's Brief at pp. 10-12. Plaintiff's claim fails to the extent he relies on the low GAF score to establish his disability claim. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). A GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

---

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

*Kennedy*, 247 Fed. Appx. at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Accordingly, plaintiff cannot establish disability relying solely on the low GAF scores assigned by Dr. Bentley.

Plaintiff also contends that the ALJ improperly relied on the findings of the non-examining psychologist, Dr. Greaves. Plaintiff's Brief at pp. 10-12. As a general rule, the Commissioner gives more weight to the opinion of a source who has examined the claimant rather than to the opinion of a source who has not examined the claimant. 20 C.F.R. §§ 404.1527(c)(1) and 416.927(c)(1). However, an ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i)(state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). *See Carter v. Commissioner of Social Security*, 36 Fed.Appx. 190, 191 (6th Cir. 2002) ("a non-examining physician's opinion may be accepted over that of examining doctors when the non-examining physician clearly states the reasons for his differing opinion," citing *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)). *See also, Fletcher v. Commissioner of Social Security*, No. 99-5902, 2000 WL 687658 (6th Cir. May 19, 2000) (rejecting *per se* rule that opinion of non-examining medical source cannot constitute substantial evidence when those opinions are contradicted by the opinions of examining but non-treating consultants); SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources"). Here, the ALJ could properly discount Dr. Bentley's opinion and give more weight to the opinion of the non-examining psychologist, Dr.

Greaves, who had the opportunity to review and consider all of plaintiff's medical evidence (AR 27). Plaintiff's claim of error will be denied.

> **B. Has the Commissioner committed legal error in the consideration of non-examining physician testimony requiring reversal?**

Plaintiff contends that the ALJ erred by relying on the evidence presented by the "non-examining staff medical experts" rather then "the opinions of treating providers." Plaintiff's Brief at p. 14. Plaintiff, however, fails to point to any particular treating providers that the ALJ improperly evaluated. It is not enough for plaintiff to simply raise this issue without identifying the treating physicians, their opinions and the ALJ's evaluation of those opinions. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

> **C. Has the Commissioner committed legal error in taking administrative notice of facts not in evidence?**

Plaintiff contends that the ALJ committed legal error because she took "administrative notice of facts not in evidence" while evaluating plaintiff's credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to

13

pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

> **1.    Plaintiff's lack of medical treatment and failure to take prescribed medication**

Plaintiff contends that the ALJ committed error because she did not account for plaintiff's lack of health insurance. Plaintiff does not set forth any particular finding by the ALJ to support this claim, stating only that:

> A basis for the ALJ's findings include the claimant's failure to take pain medication or receive physical exams. (AR 26). The record confirms that the claimant had no health insurance for medication or treatment. (AR 618, 623).

Plaintiff's Brief at p. 4. Presumably, plaintiff is referring to these passages which appear at page 26 of the administrative record:

> The claimant's subjective complaints of disabling pain and symptoms beginning November 5, 2009 are not entirely credible and not fully supported by objective medical evidence or other subjective factors. Beginning November 5,

14

2009, a consultative examination showed that the claimant seemed to recover sufficiently from his back surgery to return to work. The claimant demonstrated a normal gait, a full range of motion in all joints, including his lumbar spine, a negative straight leg raise, and no deficits in strength or sensation. *Notably, he did not undergo another physical examination after his consultative examination, or take any pain medications*.

The claimant's lack of any physical examination or treatment after November 5, 2009 indicate that his physical impairments were no longer disabling and detract from the credibility of his allegations that he was still unable to perform any work (Exhibit 15F). *Furthermore, although the claimant would presumably be in the worse pain prior to his 2008 surgery, he did not seek out mental health treatment until the spring of 2010.* In fact, prior to his operation there were no signs of mood magnification, medications, or treatment to support a prior diagnosis of bipolar disorder. The claimant's examination by Mr. Bentley in February 2010 also seems inconsistent with the claimant's lack of complaints and treatment at that time. Once the claimant began treatment and medication, he appeared to be dramatically improved with a euthymic mood and affect, and a sense of humor. He reported good sleep, and a motivation to complete activities. The claimant's quick improvement with medication also indicates that while medicated, he is able to perform some work (Exhibits 12F, 21F, 22F, 23F).

(AR 17) (emphasis added).

Pursuant to SSR 96-7p, an ALJ cannot draw inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure:

[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example: . . .

15

> * The individual may be unable to afford treatment and may not have access to free or low-cost medical services. . . .

SSR 96-7p, 1996 WL 374186 at *7-8 (July 2, 1996).

The ALJ's decision discounted plaintiff's credibility because he did not seek medication or treatment from November 5, 2009 through the Spring of 2010 (AR 26). Contrary to plaintiff's claim, there is no evidence that plaintiff lacked health insurance during any of that time period, with the exception of May and June 2010. Plaintiff's only evidence on this issue comes from two medical records from May and June 2010 in which plaintiff stated to personnel at Ionia County Community Mental Health (CMH) that he did not have health insurance (AR 618, 623). It is noteworthy that plaintiff made those statements while he was receiving treatment at CMH (AR 25, 618, 623). Records reflect that during his June 2010 visit to CMH, plaintiff was referred to Montcalm Area Health Center/Cherry Street Services for additional treatment (AR 623). This record indicates that plaintiff had access to some level of health care even for the short time he was not insured.

In addition, the ALJ questioned plaintiff about his use of pain medication and why he did not take Vicodin as prescribed (AR 65-67, 69-71). Plaintiff stated that he did not take prescribed pain medication because in his words, "I really don't like the idea of pills and that" (AR 65). Plaintiff also provided extensive testimony regarding his use of marijuana. At the time of the hearing, plaintiff had recently obtained a medical marijuana card and smoked marijuana for his back pain (AR 71). Plaintiff gave conflicting testimony regarding the reasons why his treating physician, Dr. Loren Smith, stopped his Vicodin prescription. First, plaintiff testified that Dr. Smith would not prescribe plaintiff Vicodin after the doctor found marijuana in his urine (AR 65). Second, plaintiff suggested that Dr. Smith took him off of Vicodin because he was addicted to the medication (AR

16

65-66). Third, plaintiff testified that when Dr. Smith found out that plaintiff was smoking marijuana (before he "was legal"), the doctor took him off Vicodin, and told plaintiff that "if you're already taking [marijuana] for chronic back pain then you don't need [Vicodin]" (AR 71).

Plaintiff also testified that while the marijuana helped him relax it did not do much for the pain:

> Q   And you think that [smoking marijuana] helps your pain?
>
> A   It helps me relax a little bit. Not so much the pain, but more relaxes me. Gets my mind off some of the stuff when I'm depressed.

(AR 66).

Based on this line of questioning, the ALJ considered plaintiff's explanations regarding his failure to pursue treatment and take prescribed medication. While plaintiff stated a preference for smoking marijuana over taking Vicodin pills (even though the marijuana did not provide much relief from his pain), plaintiff never claimed that he was unable to obtain treatment due to a lack of insurance. Accordingly, plaintiff's claim of error will be denied.

### 2. Plaintiff's demeanor

Plaintiff contends that the ALJ ignored the serious limitations of the medical examiners and treaters because of the ALJ's observations of plaintiff at the hearing. The ALJ addressed plaintiff's demeanor as follows:

> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. He made several attempts at humor, and appeared articulate and focused. This presentation does not support his allegations of depression severe enough to prevent him from performing all work. The undersigned emphasizes that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity

(AR 26). The ALJ could properly address plaintiff's demeanor at the hearing. It is well established that "[t]he ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." *Bradley v. Secretary of Health & Human Services*, 862 F.2d 1224, 1227 (6th Cir. 1988). This claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 28, 2014                    /s/ Hugh W. Brenneman, Jr.
                                         HUGH W. BRENNEMAN, JR.
                                         United States Magistrate Judge